UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- *v.* -

EDUAR VIDAL,

Defendant.

S1 21 Cr. 726 (DLC)

**MOTIONS *IN LIMINE* OF THE UNITED STATES OF AMERICA AND SUPPORTING MEMORANDUM OF LAW**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
Attorney for the United States of America

T. Josiah Pertz
Jonathan Bodansky
Jilan J. Kamal
Assistant United States Attorneys
*Of Counsel*

# TABLE OF CONTENTS


I. Preliminary Statement ... 6
II. Background ... 6
III. Co-Conspirator Statements Made in Furtherance of the Conspiracy Should Be Admitted ... 7
A. Background ... 7
B. Applicable Law ... 9
IV. Business Records Are Admissible at Trial ... 13
A. Applicable Law ... 13
B. Discussion ... 16
V. The Court Should Preclude Evidence or Argument Concerning Alleged Reliance on Advice of Counsel in Engaging in the Charged Conduct, Unless and Until the Defendant Establishes an Admissible Factual Basis ... 18
A. Background ... 18
B. Applicable Law ... 20
1. Elements of the Advice of Counsel Defense ... 20
2. Notice and Disclosure Requirements ... 22
3. Federal Rule of Evidence 104 ... 24
C. Discussion ... 26
1. Vidal Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense ... 26
2. Vidal Should Be Precluded From Offering Argument—Including in His Opening Statement, if Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until He Establishes an Admissible Factual Basis for the Elements of the Defense ... 26
3. The Defendant Should Be Precluded from Offering Argument or Evidence Suggesting He is Not Guilty Because an Attorney Purportedly "Approved" of the Lawfulness of the Conduct or Did Not Warn Him Against Certain Conduct ... 27
VI. The Government Should be Permitted to Introduce Vidal's Proffer Statements If Vidal Opens the Door ... 29
A. Background ... 29
B. Applicable Law ... 32
C. Discussion ... 36
VII. The Court Should Preclude Any Defense Evidence of Purportedly Non-Fraudulent Conduct ... 37
VIII. Conclusion ... 38

**TABLE OF AUTHORITIES**

*Bourjaily v. United States*, 483 U.S. 171 (1987) ....................9, 24
*Crawford v. Washington*, 541 U.S. 36 (2004) ....................13
*Davis v. Washington*, 547 U.S. 813 (2006)....................14
*In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 2000); ....................23
*Lurie v. Wittner*, 228 F.3d 113 (2d Cir. 2000) ....................22
*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627 (2d Cir. 1994) ....................14
*S.E.C. v. Cavanagh*, 1 F. Supp. 2d 337 (S.D.N.Y.), *aff'd*, 155 F.3d 129 (2d Cir. 1998).......21
*S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013)....................28, 29
*United States v. Adefehinti*, 510 F.3d 319 (D.C. Cir. 2008) ....................15
*United States v. Al-Imam*, 382 F. Supp. 3d 51 (D.D.C. 2019) ....................19
*United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) ....................30
*United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012)....................15
*United States v. Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 15, 2021) (Dkt. No. 115).......24
*United States v. Atias*, No. 14-CR-0403(DRH), 2017 WL 563978 (E.D.N.Y. Feb. 10, 2017) ....................28,29
*United States v. Ayelotan*, 917 F.3d 394 (5th Cir. 2019) ....................14,17
*United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005) ....................32,33
*United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1171 (2d Cir. 1989)....................9, 24
*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)....................23
*United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015) ....................28
*United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080 (D. Minn. July 11, 2016)..25
*United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371 (S.D.N.Y. June 4, 2008) ....................24
*United States v. Bryant*, 520 Fed. App'x 11 (2d Cir. Apr. 3, 2013) ....................35
*United States v. Bryant*, No. 04 Cr. 47, 2006 WL 1700107 (W.D. Va. June 15, 2006) .......16
*United States v. Camacho*, 353 F. Supp. 2d 524 (S.D.N.Y. 2005) ....................25
*United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979) ....................9
*United States v. Capanelli*, 479 F.3d 163 (2d Cir. 2007)....................12

*United States v. Carr*, 740 F.2d 339 (5th Cir. 1984) ..........21
*United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) 37
*United States v. Cheek*, 3 F.3d 1057 (7th Cir. 1993) ..........21
*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012) ..........20, 21, 27
*United States v. Condon*, 132 F.3d 653 (11th Cir. 1998)..........22
*United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018)..........23
*United States v. Desena*, 260 F.3d 150 (2d Cir. 2001) ..........10, 12
*United States v. Ellis*, 460 F.3d 920 (7th Cir. 2006)..........15
*United States v. Escobar*, 50 F.3d 1414 (8th Cir. 1995)..........11
*United States v. Evangelista*, 122 F.3d 112 (2d Cir. 1997) ..........22
*United States v. Feliz*, 467 F.3d 227 (2d Cir. 2006) ..........14
*United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002) ..........11
*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999) ..........9
*United States v. Gore*, 154 F.3d 34 (2d Cir. 1998) ..........12
*United States v. Greenspan*, 923 F.3d 138 (3d Cir. 2019)..........20, 22
*United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522 (E.D.N.Y. Jan. 8, 2010)..24,26
*United States v. Int'l Bhd. of Teamsters*, 817 F. Supp. 337 (S.D.N.Y. 1993) ..........21
*United States v. Int'l Bhd. of Teamsters*, 831 F. Supp. 278 (S.D.N.Y. 1993) ..........22
*United States v. Jefferson*, 215 F.3d 820 (8th Cir. 2000)..........11
*United States v. Jimenez*, 513 F.3d 62 (3d Cir. 2008) ..........16
*United States v. Lozano-Reyes*, No. 95-1707, 1996 U.S. App. LEXIS 14182 (2d Cir. June 12, 1996) ..........11
*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990);..........10
*United States v. Mezzanatto*, 513 U.S. 196 (1995) ..........32
*United States v. Paccione*, No. 99-1211(L), 2000 WL 34251719 (2d Cir. Feb. 3, 2000) .....9
*United States v. Padilla*, 203 F.3d 156 (2d Cir. 2000)..........10
*United States v. Paul*, 110 F.3d 869 (2d Cir. 1997) ..........22
*United States v. Paul*, 110 F.3d 869 (2d Cir. 1997)..........25
*United States v. Perez*, No. 09 Cr. 1153 (MEA), 2011 WL 1431985 (S.D.N.Y. Apr. 12, 2011) 37

*United States v. Qualls*, 53 F. Supp. 2d 241 (E.D.N.Y. 2008), *aff'd summary order*, 613 Fed. Appx. 25 (2d Cir. 2015)........................................................................................15
*United States v. Quinones*, 417 F. App'x 65 (2d Cir. 2011) ..............................................22, 26
*United States v. Quinones*, 417 F. App'x 65 (2d Cir. 2011)................................................21
United States v. *Rahme*, 813 F.2d 31 (2d Cir. 1987) ..........................................................10
*United States v. Rastelli*, 870 F.2d 822 (2d Cir. 1989) .......................................................10
*United States v. Rivera*, 22 F.3d 430 (2d Cir. 1994)...........................................................9,10
*United States v. Rosemond*, 841 F.3d 95 (2d Cir. 2016)......................................................32
*United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) ..............................................................................................................................24
*United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018).24
*United States v. Scully*, 877 F.3d 464 (2d Cir. 2017)..........................................................22, 26
*United States v. Shaw*, No. 08-CR-2978 (2d Cir. Apr. 22, 2009), 2009 WL 6870075..........34
*United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83 (2d Cir. 1999) ............................12
*United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978) ........................................................21
*United States v. Strother*, 49 F.3d 869 (2d Cir. 1995) .........................................................14
*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988)...............................................10
*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) ..............................................................10
*United States v. Valencia*, 826 F.2d 169, 171 (2d Cir. 1987) .............................................24
*United States v. Van Allen*, 524 F.3d 814 (7th Cir. 2008) ..................................................20
*United States v. Varone*, No. 08 Cr. 184, 2008 WL 11352621 (N.D. Ohio Dec. 4, 2008) ...16
*United States v. Velez*, 354 F.3d 190 (2d Cir. 2004)............................................................32
*United States v. Villegas*, 899 F.2d 1324 (2d Cir. 1990) .....................................................25
*United States v. Walker*, 191 F.3d 336 (2d Cir. 1999).........................................................37
*United States v. Weigand*, No. 20-CR-188 (JSR), 2021 WL 568173 (S.D.N.Y. Feb. 14, 2021) ..............................................................................................................................17
*United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074 (S.D.N.Y. June 20, 2015)...............................................................................................................23
*United States v. Yeley-Davis*, 632 F.3d 673 (10th Cir. 2011)..............................................15

## I. Preliminary Statement

The Government respectfully submits these motions *in limine* requesting rulings to permit the admission at trial of (1) certain statements made by uncharged co-conspirators in furtherance of the conspiracy; (2) financial and corporate records admissible as business records; and (3) evidence of the defendant's statements regarding the charged conduct, should the defendant testify or raise arguments inconsistent with statements he made to the Government in proffer sessions. Additionally, the Government seeks rulings to preclude the admission at trial of (4) an advice-of-counsel defense and (5) "good acts" evidence regarding the defendant's business dealings.

## II. Background

Two-count Superseding Indictment S1 21 Cr. 726 (DLC) (the "Indictment") charges Eduar Vidal with conspiring to commit bank fraud (Count One), and substantive bank-fraud (Count Two), from at least in or about June 2015 through in or about March 2016, in connection with a scheme to fraudulently obtain auto loans by falsely representing that the loans were for the purchase of cars sold by Vidal's auto dealership, when, in fact, no cars were purchased and the loan proceeds were used for the conspirators' own benefit.

At trial, the Government expects to prove the following, in substance and in part.

During the period charged in the Indictment, Eduar Vidal ran an auto dealership in the Bronx called E&V Auto Sales Corp. ("E&V Auto"), which he used to perpetrate the charged scheme. A credit repair company ("Credit Repair Company-1") referred clients to Vidal. The clients were not looking to buy a car, but merely interested in improving their credit or obtaining cash for personal use. Vidal would provide a bill of sale for a vehicle on his lot, including the make, model, and vehicle identification number ("VIN"), and the client, aided by Credit Repair Company-1, would then use this information to submit an application for an auto loan. A victim financial institution, typically a credit union, would approve the loan application and issue a check

for the purchase price of the vehicle. The checks, which were made out to E&V Auto and the client, explicitly stated that the funds were solely for the purchase of a vehicle with a particular make, model, year and VIN specified. In some cases the same client obtained auto loans from multiple different financial institutions all for the purported purchase of the same vehicle. The funds were not, however, used to purchase the specified vehicle. Instead, Vidal deposited the checks in his account and either transferred the proceeds, minus his commission, to Credit Repair Company-1 or endorsed the checks and cashed them at check-cashing stores, taking a cut of the cash, and giving the rest back to the client. The customer did not buy a car from E&V Auto and Vidal knew all along that the customer would not be buying the car. Indeed, Vidal reassured clients in advance of the transaction that no vehicle purchase was necessary. Instead, the "customer" benefited by obtaining a loan with a lower interest rate than a personal loan might carry or by receiving a cut of the proceeds.

## III. Co-Conspirator Statements Made in Furtherance of the Conspiracy Should Be Admitted

The Government moves *in limine* to admit under Federal Rule of Evidence 801(d)(2)(E) various co-conspirator statements made in furtherance of the conspiracy charged in Count One of the Indictment. The Government does not by this motion attempt to itemize every co-conspirator statement that the Government plans to offer at trial, but rather describes the general nature of those statements and why they are admissible under Rule 801(d)(2)(E).

### A. Background

The Government anticipates that at trial, one or more of the clients who participated in the conspiracy will testify as to their conversations and interactions with not only the defendant, but also his co-conspirators.

Most notably, the Government anticipates that the client identified in the Complaint as "Loan Applicant-4" will testify that, in late 2015 or early 2016, she was introduced to Credit Repair Company-1, which she understood helped improve clients' credit ratings. Loan Applicant-4 will testify that she met multiple times with the owner of Credit Repair Company-1, identified in the Complaint as "Individual-1," and one of his associates, to help her improve her credit score and obtain a loan for her business. During those meetings, Loan Applicant-4 provided personal identifying information and financial information to Individual-1, and she signed a series of contracts authorizing Credit Repair Company-1 to take certain credit-repair actions on her behalf.

Loan Applicant-4 will testify that Individual-1 proceeded to take out numerous loans on her behalf, and that she later learned, after the fact, that Individual-1 applied for those loans using falsified financial information for Loan Applicant-4. Loan Applicant-4 will further explain that when she learned that four of the loans were *auto* loans, she advised Individual-1 that she had no intention of purchasing a car. Loan Applicant-4 will testify that Individual-1 responded, in substance and in part, that she could take the auto loan proceeds without purchasing a vehicle, so long as she made her payments to the bank.

Loan Applicant-4 will testify that she subsequently received checks for the auto loan proceeds, and that those checks were made out to E&V Auto. She will testify that to facilitate the cashing of those checks, Individual-1 introduced Loan Applicant-4 to the defendant and explained to her that the defendant was the owner of E&V Auto and would help cash the checks. Loan Applicant-4 will explain that she met with the defendant, and that the defendant stated, in substance and in part, that he would cash the checks in exchange for 8% of the loan proceeds, which he would retain as compensation. The defendant also stated to Loan Applicant-4, just as Individual-

1 had stated to her, that, in substance and in part, she did not have to purchase or take possession of any vehicle as part of the arrangement.

**B. Applicable Law**

Rule 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

The rule also permits the introduction of uncharged co-conspirator statements, subject to the same requirements. *United States v. Paccione*, No. 99-1211(L), 2000 WL 34251719, at *2 (2d Cir. Feb. 3, 2000) (affirming admissibility of co-conspirator statements through an uncharged co-conspirator). It is also not necessary that the declarant be formally charged as a co-defendant, nor even that the indictment charge a conspiracy. *See United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979). And "[t]hough the Rule requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, . . . there is no requirement that the person to whom the statement is made also be a member." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1171, 1199 (2d Cir. 1989); *see also United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994) (admissible co-conspirator statements can include "communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals").

When determining whether the predicate conspiracy has been established, the district court is not bound by the rules of evidence, *see* Fed. R. Evid. 104(a), and "may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181).

To be in furtherance of a conspiracy, the statements must have been designed in some way "to promote or facilitate achievement of the goals of that conspiracy." *Rivera*, 22 F.3d at 436. Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener – who need not be a coconspirator – to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158 (citation omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *see also United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *see also United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is also admissible, as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994); *see also Desena*, 260 F.3d at 159; *Maldonado-Rivera*, 922 F.2d at 958; *United States v. Flaharty*, 295 F.3d 182, 199–200 (2d Cir. 2002).

The evidentiary standard for proving the "in furtherance" element is a low one, which is in keeping with the more general principle that "[t]he in furtherance requirement of Rule 801(d)(2)(E) is construed broadly." *United States v. Escobar*, 50 F.3d 1414, 1423 (8th Cir. 1995). "Statements that describe past events are in furtherance of the conspiracy if they are made . . . simply to keep coconspirators abreast of current developments and problems facing the group." *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (citation omitted). For example, in *United States v. Lozano-Reyes*, the Second Circuit affirmed the trial court's admission of co-conspirator statements relating to past events because the statements served a current purpose in the conspiracy, namely, "to engender trust, to increase [the witness's] familiarity with the conspiracy's modus operandi, and to outline future conspiratorial actions and the anticipated profits." *United States v. Lozano-Reyes*, No. 95-1707, 1996 U.S. App. LEXIS 14182, at *5 (2d Cir. June 12, 1996).

**C. Discussion**

Based on the statements set forth above, and the evidence referenced elsewhere in this memorandum, there can be no doubt that there existed a conspiracy to defraud one or more financial institutions, and that the defendant and his co-conspirators, including Individual-1, joined that conspiracy. Individual-1 submitted auto loan applications on Loan Applicant-4's behalf, using falsified financial information and knowing full well that Loan Applicant-4 had no intention of purchasing a vehicle. Individual-1 then referred Loan Applicant-4 to the defendant, and the defendant assisted in cashing the auto loan proceeds despite similarly knowing that no car would be purchased. Accordingly, each of the co-conspirators "entered into [the] joint enterprise with consciousness of its general nature and extent." *Beech–Nut Nutrition Corp.*, 871 F.2d at 1191. And, although they may not each have been privy to all aspects of the conspiracy and how it was executed, their continued involvement in it, even after being put on express notice of the fraudulent

nature of the auto loan applications by the language on the back of the checks, and even after receiving proceeds from past fraudulent loans, is sufficient to establish that they shared a "'common purpose' and agree[d] on the 'essential nature' of the enterprise." *United States v. Capanelli*, 479 F.3d 163, 166–67 (2d Cir. 2007) (quoting *Beech–Nut Nutrition Corp.*, 871 F.2d at 1191–92); *see also United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998) ("The defendant need not know . . . all of the details of the conspiracy.").

The co-conspirator statements referenced above were also plainly made during and in furtherance of the conspiracy charged in Count One. All the statements at issue were made during the charged period, and directly related to a subset of the fraudulent auto loans that are the subject of this case. The statements were designed to induce Loan Applicant-4's continued involvement in the scheme, and they are thus admissible pursuant to Rule 801(d)(2)(E) because, among other things, they were "designed to promote or facilitate achievement of the goals of th[e] conspiracy," *Rivera*, 22 F.3d at 436; "prompt[ed] the listener . . . to respond in a way that promote[d] or facilitate[d] the carrying out of a criminal activity," *Maldonado-Rivera*, 922 F.2d at 958; and "provide[d] reassurance," *Desena*, 260 F.3d at 158 (quoting *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999)).

For the foregoing reasons, the Government respectfully requests that the Court admit the statements referenced above – as well as any similar statements from other clients called by the Government – pursuant to Rule 801(d)(2).[1]

[1] To the extent that some of the statements classified herein as co-conspirator statements involved direct statements of the defendant, they are also admissible on the alternative ground that they are statements of a party opponent and therefore not hearsay under Federal Rule of Evidence 801(d)(2)(A).

## IV. Business Records Are Admissible at Trial

The Government writes to respectfully request that, at trial, the Court admit into evidence certain business records on the basis of written declarations of the relevant custodian of records, pursuant to Federal Rules of Evidence 803(6) and 902(11).

Trial in this matter is scheduled to begin on June 13, 2022. Defense counsel has advised the Government that the defendant is unwilling to stipulate to the authenticity of a document unless there is a witness on the stand to answer questions regarding the documents. The Government plans to introduce business records from multiple financial institutions and governmental entities, including credit unions, banks, the National Automobile Dealers Association ("NADA"), the New York State Department of Motor Vehicles, and the New York State Department of Labor. Calling witness custodians from each of these institutions merely to introduce documents would require witnesses to travel, including from out-of-state.

A finding by the Court that certain business records may be introduced pursuant to written certification under Rule 902(11) will obviate the need for significant inconvenience, expenditure of time, and potential risk by these third parties. This is particularly true given the ongoing COVID-19 pandemic, as well as the necessity of properly complying with the Court's COVID-19 protocols.

Moreover, a finding by the Court that business records may be introduced pursuant to written certification would meaningfully streamline the Government's presentation of evidence, serve the ends of judicial economy, and preserve the time and attention of the jury. Rule 902(11) exists for precisely this reason.

### A. Applicable Law

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court found that out-of-court statements that are "testimonial" violate the Confrontation Clause of the Sixth Amendment and are inadmissible unless the declarant is unavailable, and the defendant has had prior opportunity to cross-examine the declarant regarding the statement. The Second Circuit, however, has held that

business records properly admitted under Federal Rule of Evidence 803(6) "cannot be testimonial because a business record is fundamentally inconsistent with what the Supreme Court has suggested comprise the defining characteristics of testimonial evidence." *United States v. Feliz*, 467 F.3d 227, 233-34 (2d Cir. 2006); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements are "testimonial" if their "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution").

Under Rule 803(6), a record may be admitted as non-hearsay if it was made at or near the time by someone with knowledge, or who had the information transmitted to them by someone with knowledge; the record was kept in the course of a regularly conducted activity of a business or organization; and making the record was a regular practice of that business activity. Fed. R. Evid. 803(6). "The principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632-33 (2d Cir. 1994) (internal quotation marks omitted). The Second Circuit has taken a "generous view of the business records exception, construing it to favor [] the admission of evidence . . . if it has any probative value at all." *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (internal citations omitted).

Business records of regularly conducted activity that meet the necessary conditions to qualify under the hearsay exception may be authenticated, among other methods, by a certification that complies with Rule 902(11). Fed. R. Evid. 803(6)(D); *see also United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) ("Records are self-authenticating if they include a custodian certification that the records 'meet[] the requirements of Rule 803(6)(A)-(C).'"). Specifically, Rule 902(11) provides, in relevant part, that "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person . . ." is self-authenticating and requires no extrinsic evidence of authenticity to be admitted. Prior to trial, the proponent of the records must also give the adverse party reasonable

written notice of the intent to offer the records and make the records and certifications available for inspection so that the adverse party has a fair opportunity to challenge them. *Id.*

Just as properly admitted business records are not considered testimonial, so too a certification required under Rule 902(11) to authenticate such records is not considered testimonial. In *United States v. Qualls*, 53 F. Supp. 2d 241, 245 (E.D.N.Y. 2008), *aff'd summary order*, 613 Fed. Appx. 25 (2d Cir. 2015), the court held that authentication of foreign business records pursuant to Section 3505 did not violate the Confrontation Clause of the Sixth Amendment. In so holding, the court reasoned that prohibiting the admission of records necessary to authenticate the business records themselves would be contrary to the Supreme Court's intention to support the admission of business records as nontestimonial. *Id.* at 246. The court further observed that judicial economy would be reduced with little gain to the truth-seeking process if these business records had to be authenticated by live witness testimony. *Id.*

While the Second Circuit's summary order affirming the decision in *Qualls* did not explicitly reach the question of whether a certificate authenticating business records could itself be considered testimonial, all other circuits that have addressed the question have held that it is not.[2] *See United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir. 2011) (certificate of authenticity presented under Rule 902(11) is not testimonial); *United States v. Anekwu*, 695 F.3d 967, 977 (9th Cir. 2012) (not plain error for district court to admit business records authenticated by certificate where the purpose of the certificate was merely to authenticate the records and not to establish or prove a fact at trial); *United States v. Adefehinti*, 510 F.3d 319, 327-38 (D.C. Cir. 2008) (authentication of hundreds of loan applications, sales contracts, promissory notes, verifications of deposit and of employment by way of 902(11) certifications by numerous custodians of record is permissible under *Crawford*); *United States v. Ellis*, 460 F.3d 920, 927 (7th

[2] In *Qualls*, the foreign business records at issue were admitted by the district court under 18 U.S.C. § 3505 based on records certifications, but the certifications themselves were not introduced as evidence. The Second Circuit found that the admission was proper but did not address whether the certifications themselves were testimonial, reasoning that because the certifications were not in evidence, there could be no Confrontation Clause issue. 613 Fed. Appx. at 28-29.

Cir. 2006) (written certification attesting to authenticity of business record is not testimonial evidence). *See also United States v. Al-Imam*, 382 F. Supp. 3d 51, 59-60 (D.D.C. 2019) ("Every court that has addressed this issue has concluded that admission of certifications pursuant to Rule 803(6)—including § 3505 and its analogs in Rule 902(11) and (12)—does not pose Confrontation Clause problems" and gathering cases); *United States v. Varone*, No. 08 Cr. 184, 2008 WL 11352621, at *1 (N.D. Ohio Dec. 4, 2008) ("The certificates of authenticity, in this case, do not purport to convey any information about Defendant, but merely establish the foundational elements necessary to create a business record."); *United States v. Bryant*, No. 04 Cr. 47, 2006 WL 1700107, at *4 (W.D. Va. June 15, 2006) (a "business record certification . . . does not serve independently as evidence in[a] case; rather, it serves merely to lay a foundation for the admission of business records"); *cf. United States v. Jimenez*, 513 F.3d 62, 77-80 (3d Cir. 2008) (reserving decision on whether certificates of authenticity were subject to Confrontation Clause and holding that even if such certificates were testimonial, the admission of these certificates to authenticate bank records was harmless error because there was no challenge to the authenticity of the bank records themselves).

**B. Discussion**

The specific business records at issue here are financial institution account records, including, where available, account opening documents, account statements, check images, money order images, and loan application documents ("Financial Records"), as well as vehicle information maintained by Thompson-Reuters, NADA, and state motor vehicles departments, including the make, model and year of various VINs, vehicle registration information and certificates of title ("Vehicle Records"), and records of corporate formation and activity from the New York State Department of State and Department of Labor ("Corporate Records"). Many of these records were produced with an accompanying custodial records certification. The Government is in the process of collecting the remaining certifications and will produce those as

soon as they are received. These certifications repeat the requirements of Rule 803(6) nearly verbatim and are signed subject to the penalty of perjury.

The defendant has refused to enter a stipulation at this time, on the grounds that defense counsel seeks to cross-examine the custodial witnesses, thereby suggesting that the Government would be unable to offer these exhibits without a witness despite the existence of Rule 902(11). The defendant has not offered any specific reason to doubt that the Financial Records, Vehicle Records and Corporate Records are authentic business records. *See* Fed. R. Evid. 803(6)(E) (noting that records of regularly conducted activity in accordance with Rule 803(6)(A)-(D) are admissible absent a showing that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness). Indeed, a proper foundation for the admission of the records can be established by the certificate of the relevant records custodian, which restates the requirements of Rule 803(6)(A)-(C) nearly verbatim. *See, e.g.*, *United States v. Weigand*, No. 20-CR-188 (JSR), 2021 WL 568173, at *3 (S.D.N.Y. Feb. 14, 2021) (finding that where [d]defendants offer[ed] no specific reason to doubt the self-authenticability" of certain bank records and other similar business records, those records were self-authenticating); *Ayelotan*, 917 F.3d at 401-03 (finding that "email provider's statement that one user wrote and sent a message to another user at the recorded time" was a self-authenticating business record when accompanied by proper certificate from records custodian); *see also Conde*, 19 Cr. 808, ECF No. 244 (granting Government's motion to use records certification to establish the foundation as well as the authenticity of bank records and certain other business records).

As noted above, the Government has already produced to the defendant many of the certifications it intends to rely upon to admit these records, and is in the process of collecting the remainder of the certifications, and intends to produce those to defendant upon receipt of the certifications. Accordingly, the defendant now has "notice of the intent to offer" the relevant records, and an opportunity to inspect them, "so that the [adverse] party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). To the extent the defendant is not challenging authenticity,

but simply has factual questions custodial witnesses might be in a position to answer, the defendant would be able to call those witnesses.

For the reasons stated above, the Government respectfully requests that the Court rule that the Government may introduce at trial the business records discussed above pursuant to Federal Rules of Evidence 803(6) and 902(11) and without the live testimony of any document custodian.

## V. The Court Should Preclude Evidence or Argument Concerning Alleged Reliance on Advice of Counsel in Engaging in the Charged Conduct, Unless and Until the Defendant Establishes an Admissible Factual Basis

### A. Background

Through the Government's communications with defense counsel and the defendant's proffered statements, it believes Vidal may assert in his defense that he relied on the advice of counsel when engaging in the conduct charged in this case. The defense has also submitted a proposed jury instruction on the advice-of-counsel defense. (ECF 30 at 8.)

During his proffer on August 30, 2021, Vidal claimed that he had consulted a lawyer ("Lawyer-1"), for advice regarding a particular form letter (the "Form Letter") that Vidal had his clients sign when the clients received loan proceeds without purchasing a vehicle. Each Form Letter had similar wording and was tailored with the name of the client and the vehicle that was the subject of the loan. The letters noted that the client was requesting to "cancel the purchase" of a particular vehicle, that the dealer had received a check from a credit union, and that the dealer was returning the funds to the client minus a "penalty fee." The letter concluded, "Both parties agree that the auto broker did not deliver said vehicle, nor hand over title solely because of the buyers request to cancel the vehicle purchase." The client signed the letter, which was notarized.

After Vidal raised this issue in a proffer, with Vidal and his counsel still present, the Government made a phone call to Lawyer-1 and put the call on speakerphone mode. Lawyer-1 stated, in substance and in part, that the name Eduar Vidal rang a bell, but he had never seen such a letter. The Government gave a summary of the conduct with which Vidal was charged, and Lawyer-1 said he did not advise Vidal regarding that conduct. After that conversation, Vidal also proffered that he had provided the Form Letter to another lawyer ("Lawyer-2"), but did not detail any relevant advice he supposedly received.

On or about September 8, 2021, Vidal's prior counsel provided the Government with a letter from Lawyer-1. The letter read, in substance and in part, as follows:

> Please note that I have represented Mr. Vidal in legal matters in the past.
> He, as the owner of the E V AUTO SALES CORP dealership located at 2160 Webster [A]venue, Bronx, NY 10457, buys vehicles at various auctions and sells them at his business. Clients pay cash or obtain their own financing.
> My client presented me with a notarized letter asking for my opinion in which the client decided not to buy the car and asked him to return the money minus the fee for the offers or transactions returned with the dealer; and I told him that I didn't see anything illegal in that letter[.]

After receiving that letter, Vidal, through counsel, agreed to waive the attorney-client privilege so that Lawyer-1 could meet with the Government. On November 12, 2021, law enforcement agents and an attorney for the Government interviewed Lawyer-1 at Lawyer-1's office in Manhattan. Lawyer-1 stated the following, in substance and in part: His practice focuses on landlord/tenant disputes and business transactions. He has one current criminal case, has handled criminal cases infrequently in the past, and has not practiced white collar defense. Years earlier, Vidal had asked him whether the Form Letter could be used as proof that Vidal returned funds to the customer, if a customer did not want to take a car. Lawyer-1 had no notes or memos regarding the meeting with Vidal, which he recalled happened years earlier and lasted 15 to20 minutes. Vidal did not show Lawyer-1 a loan check or loan agreement, and did not discuss cashing multiple checks from different banks for the same borrower and vehicle. Lawyer-1 confirmed that

he never told Vidal it was acceptable to do this. Vidal never told him why the transaction was canceled. Vidal did not mention whether he had already taken the "penalty fee" prior to providing Lawyer-1 with the Form Letter. Vidal did not tell Lawyer-1 that Vidal was cashing checks, or giving cash back to the customer after cashing a check.

On May 12, 2022, by email, the Government asked defense counsel whether counsel intends to assert an advice-of-counsel defense. The same day, counsel responded that counsel is strongly considering the defense and researching it further.

### B. Applicable Law

#### 1. Elements of the Advice of Counsel Defense

The advice-of-counsel defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. *See, e.g.*, *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019); *see also* Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 8-04. Advice-of-counsel "is not a free-standing defense." *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (internal quotation marks omitted).

To establish an advice-of-counsel defense, a defendant must show that he (1) honestly and in good faith sought the advice of counsel; (2) fully and honestly laid all the facts before his counsel; and (3) in good faith and honestly followed counsel's advice, believing it to be correct and intending that his acts be lawful. *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012). The defense applies only where the defendant sought the attorney's advice "before taking action." *United States v. Al-Shahin*, 474 F.3d 941, 947 (7th Cir. 2007) (internal quotation marks omitted). "Each requirement must be satisfied." *Colasuonno*, 697 F.3d at 181.

The first element of an advice of counsel defense restricts both the source of advice and how a defendant can seek it. Regarding the source, it is not enough that the advisor be a lawyer; he must, in fact, be acting as independent counsel to the defendant when his advice is sought. *See*

*United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984). Thus, the defense fails if the lawyer has a stake in the venture, like a financial interest in its success or a pre-existing role in its implementation. *See id.*; *S.E.C. v. Cavanagh*, 1 F. Supp. 2d 337, 374 (S.D.N.Y.), *aff'd*, 155 F.3d 129 (2d Cir. 1998). Regarding the manner of seeking advice, there is no good faith if the defendant asks a lawyer's opinion after he has already started his wrongdoing, such as when a defendant contacts a tax attorney after failing to file. *See United States v. Cheek*, 3 F.3d 1057, 1061-62 (7th Cir. 1993).

Full disclosure requires the defendant to have given his counsel "at a minimum, . . . all information necessary . . . to provide sound, informed advice," or, in other words, all "material facts necessary . . . to assess the legality of the [act] . . . ." *United States v. Int'l Bhd. of Teamsters*, 817 F. Supp. 337, 345 (S.D.N.Y. 1993) (union officials who wrongfully caused the union to loan them money not exculpated when they did not tell their counsel the amount of the loan or the union's past lending practices); *see United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (no predicate for advice-of-counsel instruction when defendant had shown his English-speaking lawyer only a Spanish-language version of the statute at issue (facts outlined in Br. & App. for the United States, 637 F. App'x 42 (2d Cir. 2014) (later proceeding remanding for new trial on other grounds), 2014 WL 3795584, at *23-24)). One does not need a law degree to know that the core elements of his plan are material and must be disclosed. *See Colasuonno*, 697 F.3d at 182. Non-disclosure negates good-faith reliance. The prosecution need not prove a fully informed lawyer would have given different advice, *id.*at 181-82, and it is no defense that the lawyer failed to ask probing questions, *see United States v. Stirling*, 571 F.2d 708, 735 (2d Cir. 1978).

The lawyer must actually opine on the lawfulness of the conduct. Silence does not suffice unless the defendant can reasonably and in good faith take that silence for unambiguous assent,

which he may do only if the attorney is an expert in the relevant area of the law. *See United States v. Condon*, 132 F.3d 653, 657 (11th Cir. 1998).

Finally, the defendant's reliance on his lawyer's advice must be reasonable. A defendant cannot reasonably rely on the advice of a lawyer who he knows lacks subject area expertise, *see Condon*, 132 F.3d at 657, or on advice that contradicts principles that are "facially explicit and susceptible to interpretation by laymen," *United States v. Int'l Bhd. of Teamsters*, 831 F. Supp. 278, 285 (S.D.N.Y. Sept. 2, 1993) (no defense to violation of unambiguous union bylaws available to members).

Where the defendant fails to meet one or more requirement, he is not entitled to a jury instruction. *Id.*; *see also, e.g.*, *Greenspan*, 923 F.3d at 146-47; *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997). Nor is he entitled to argue, directly or indirectly, that he has such a defense. *See, e.g.*, *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and "the defendant[] [in this case has] not shown the required factual predicate for an advice-of-counsel defense"). Although "[u]pon a proper request, a defendant is entitled to a jury instruction on any defense theory for which there is a foundation in the evidence, even if the trial court determines that the evidentiary foundation of the defense theory is only tenuous," *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citations omitted), the "situations in which the advice-of-counsel defense may be employed are severely limited," *Lurie v. Wittner*, 228 F.3d 113, 134 (2d Cir. 2000).

**2. Notice and Disclosure Requirements**

Raising an advice-of-counsel defense triggers practical consequences as to discovery and administration of pretrial and trial proceedings. By asserting an advice-of-counsel defense, and

thereby relying on otherwise privileged attorney-client communications, a defendant waives privilege over all other attorney-client communications about the same subject matter. "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *see also id.* at 183 n.4 ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." (citation and quotation marks omitted)); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes"); Fed. R. Evid. 502(a). As a result, defendants asserting such a defense must disclose to the government "any communications or evidence defendants intend to use to establish the defense" and "even otherwise-privileged communications that defendants do *not* intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their entirety." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) (internal quotation marks omitted; emphasis in original) (collecting cases). Failure to make such a disclosure results in forfeiture of the defense. *See Bilzerian*, 926 F.2d at 1291 (affirming refusal to let the defendant testify about his "good faith regarding the legality" of the charged conduct unless he was also subject to cross-examination regarding communications with his attorney); *see also United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *1 (S.D.N.Y. June 20, 2015) (civil defendant asserting advice-of-counsel must "make a full disclosure during discovery and the failure to do so constitutes a waiver of that defense" (internal quotation marks omitted)).

Given the complexity and issues concerning an advice-of-counsel defense, courts routinely order defendants to provide notice of whether they intend to advance such a defense in advance of trial, and, if so, to provide discovery. *See, e.g.*, *United States v. Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 15, 2021) (Dkt. No. 115) (in advance of trial, ordering defendant to "provide the government with [] written notice and the contours (including the bases and scope of, and the count or counts to which it is said to apply) of any advice of counsel defense that [the defendant] will raise at trial"); *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018). That "disclosure should include not only those documents which support [the] defense, but also all documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense." *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010); *Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 15, 2021) (Dkt. No. 115) (same).

**3. Federal Rule of Evidence 104**

Preliminary questions concerning the admissibility of evidence, including whether evidence is relevant or a privilege exists, are to be determined by the Court. Fed. R. Evid. 104(a). The Court has discretion to order a hearing to assist it in resolving such questions. Fed. R. Evid. 104(c)(3) (the court "must conduct a[] hearing" when "justice so requires"). The Court's authority to resolve such questions is rooted in its "inherent authority to manage the course of trials." *United States v. Valencia*, 826 F.2d 169, 171 (2d Cir. 1987) (internal quotation marks omitted). At such a hearing, and more generally, the proponent of evidence bears the burden of demonstrating its admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *see also United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371, at *1 (S.D.N.Y. June 4, 2008) ("As the proponent of the proposed testimony, defendant has the burden of establishing admissibility by a preponderance of the evidence."); *United States*

*v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184, at *6 (S.D.N.Y. May 10, 2007) (the "burden of showing that proffered testimony is offered to negate the *mens rea* element of a crime and not in support of some improper defense theory falls squarely on the defendant" (internal quotation marks omitted)); *United States v. Camacho*, 353 F. Supp. 2d 524, 536 (S.D.N.Y. 2005) ("defendants as proponents of the evidence bear the burden of [admissibility]").

The propriety of admitting any such evidence or argument can be determined at a preliminary hearing, where necessary. One circumstance in which a preliminary hearing may be ordered is to determine the propriety of a proffered defense. *See, e.g.*, *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) ("[I]t is appropriate for a court to hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law."). This is so for good reason: "no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter." *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990); *see also* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). A preliminary hearing may be ordered to consider a proffered advice-of-counsel defense just as it may be ordered to consider any other defense. *See also Scali*, 2018 WL 461441, at *8 n.4 ("Guided by efficiency and judicial economy, it behooves the Court to address [advice of counsel] before trial.").

Alternatively, a court may order a defendant not to offer evidence in front of the jury in support of a proffered advice-of-counsel defense until such time as there is a sufficient basis in the record. *See, e.g.*, *United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080, at *4 (D. Minn. July 11, 2016) ("Only after hearing witness testimony will the Court be in a position to determine

whether such evidence is admissible. Defense counsel shall request a sidebar or hearing outside the presence of the jury prior to eliciting any testimony that concerns legal communications . . ..").

**C. Discussion**

**1. Vidal Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense**

As noted above, Vidal's current counsel has stated that Vidal may assert an advice-of-counsel defense. Vidal himself has suggested that his conduct may have been informed by advice from counsel. Accordingly—and particularly since there appears to be no valid basis for the defense—Vidal should be ordered by May 31, 2022to provide (i) written notice of any alleged advice-of-counsel defense, including its bases, scope, and to which specific counts he believes it applies, and (ii) any discovery materials in support of this defense, to the extent not already in the Government's possession. *See Scali*, 2018 WL 461441, at *8; *Hatfield*, 2010 WL 183522, at *13.

**2. Vidal Should Be Precluded From Offering Argument—Including in His Opening Statement, if Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until He Establishes an Admissible Factual Basis for the Elements of the Defense**

The Government is unaware of any valid basis for Vidal to offer an advice-of-counsel defense. Indeed, based on the Government's investigation, the defendant appears unable to meet a single element of the rigorous four-part test. "[T]he thrust of [the advice-of-counsel defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *Beech-Nut Nutrition Corp.*, 871 F.2d at 1194; *see also Scully*, 877 F.3d at 478 (defense requires that, "[b]efore taking action, he in good faith sought the advice of an attorney").

Here, the Government is unaware of any factual basis to find that, prior to engaging in the charged conduct, Vidal spoke with an attorney for the "purpose of securing advice on the lawfulness of [the defendant's] possible future conduct." *Id.* Nor is there any factual basis of which

the Government is aware to find that, before acting, the defendant "made a full and accurate report" to any attorney of all "material facts." *Id.* And in any event, no lawyer, acting properly, would advise a client to do what Vidal did: tell a client that Vidal and the client could split the proceeds of an auto loan check even though the client would not purchase a car, endorse checks with their intended vehicle written on the reverse – including, at times, multiple checks from multiple financial institutions for the same vehicle – give the proceeds to the client minus a commission, then paper over the transaction by having a client sign a letter acknowledging that no car was provided. Not only would no lawyer, acting properly, bless this scheme, but no lawyer ever did – Lawyer-1 has denied that Vidal told him these material facts.

In short, the defendant cannot come close to establishing a basis in admissible evidence for an advice-of-counsel defense. The one item of reciprocal discovery that Vidal has offered to substantiate such a defense, a letter from Lawyer-1, is vague at best, and is particularly weak in light of Lawyer-1's other statements to law enforcement. Until such time that he establishes a proper basis for an advice of counsel defense, any argument in support of such a defense—including in the defendant's opening statement—should be precluded. *See, e.g.*, *Quinones*, 417 F. App'x at 67. For the same reasons, Vidal should be precluded from offering evidence for the purported purpose of attempting to satisfy any of the requirements of an advice-of-counsel defense, unless he first establishes, either in a preliminary hearing before or during trial, *see* Fed. R. Evid. 104, or by relying on evidence otherwise admissible at trial, that he has sufficient admissible evidence to satisfy all the defense's requirements. *See, e.g.*, *Colasuonno*, 697 F.3d at *4.

### 3. The Defendant Should Be Precluded from Offering Argument or Evidence Suggesting He is Not Guilty Because an Attorney Purportedly "Approved" of the Lawfulness of the Conduct or Did Not Warn Him Against Certain Conduct

The defendant should not be permitted to advance through the back door what would amount to a quasi-advice-of-counsel defense—that is, having failed to meet the requirements for

the defense, to argue nonetheless that the defendant should not be found guilty because another lawyer purportedly "approved" of, did not object to, or was involved in some way in the defendant's conduct—when he cannot advance an advice-of-counsel defense. That is precisely the kind of argument that is "likely to mislead the jury," *United States v. Atias*, No. 14-CR-0403(DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017), into thinking that the defendant has a defense that the law says, in no uncertain terms, he does not have. The advice-of-counsel defense is subject to multiple and meaningful restrictions—including that a defendant seek the advice of a lawyer acting as his lawyer, communicate all material facts to his lawyer, and strictly follow the advice of his lawyer—because a defense based on alleged legal advice or approval that does not meet these strictures is ripe for abuse. The defendant should not be permitted to engage in an end-run around the defense's requirements. *Cf. S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (The defendant "argues that the presence of lawyers is relevant to the overall context of the transaction, but that is such a fine-grained distinction from a reliance on counsel defense, that it would likely confuse the jury. A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. . .. This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense."); *see United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (There is no "advice-of-counsel defense without demonstrating advice of counsel.").

To be sure, the defendant, if he elects to testify, and within the bounds of the Federal Rules of Evidence, may talk about whether he believed himself to be acting wrongfully. But the fact that this subject is generally proper does not mean that all testimony (or other evidence, if any exists) purportedly offered on this subject is admissible, or that the defendant may argue that evidence

means something that, as a matter of law, it does not. To the contrary, as discussed above, a defendant is not permitted to offer evidence of the involvement of a lawyer or to suggest that he should be acquitted because a lawyer purportedly approved of or did not warn against certain conduct, unless the defendant can satisfy each of the several requirements of an advice-of-counsel defense. Accordingly, before the defendant offers any such purported evidence or makes such an argument, to the extent not otherwise admissible, the Court should order at least a *prima facie* showing, and if warranted a hearing under Rule 104. *See United States v. Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 28, 2021) (Dkt. No. 130) (ordering that "the defendant shall not offer any evidence or argue in opening statement on this entire subject [i.e., involvement of attorney in her charged conduct] without first proffering to the government and the Court, in writing, exactly what evidence or argument would be offered or made"). At a minimum, the defendant should have to describe such evidence or argument fully to the Court and the Government, before it is heard by the jury, so that it may be cabined, as is likely to be necessary, and the jury appropriately instructed. *See id.* And under no circumstance should the defendant be permitted to offer evidence or argument suggesting that the defendant relied on the "assistance" or "approv[al]" of a lawyer acting as a lawyer, a defense that has no apparent basis in fact in this case, no basis in law (unless the defendant can establish an advice-of-counsel defense, which he cannot), and in any event fails under Federal Rule of Evidence 403. *See Atias*, 2017 WL 563978, at *3; *Tourre*, 950 F. Supp. 2d at 684.

## VI. <u>The Government Should be Permitted to Introduce Vidal's Proffer Statements If Vidal Opens the Door</u>

### A. Background

In the course of the Government's investigation, Vidal made various admissions and false and misleading statements to the Government regarding the conduct charged in the Indictment. On

four occasions—on December 18, 2018, July 16, 2021, August 23, 2021, and August 30, 2021—Vidal and his attorney met with the Government for the purpose of proffering information (together, the "Proffers"). Prior to each of the Proffers, the parties signed a proffer agreement that provided protections limiting the use of statements made by the defendant at those sessions (the "Proffer Agreement").[3]

In the four Proffers, Vidal made extensive admissions about the charged scheme, including some contradictory statements. Vidal provided shifting positions about when he realized he was involved in a scam. In one telling, Vidal knew he was involved in a scam immediately. He described meeting an individual ("Credit Repair Coconspirator-1") in mid-2016, who owned a company that arranged personal and auto loans for individuals. Credit Repair Coconspirator-1 told Vidal at the outset there would be times when a client would not take the car and the loan money would be refunded, at which time Vidal would receive 10% of the loan and Credit Repair Coconspirator-1 would take 30%. Vidal agreed to this arrangement. Credit Repair Coconspirator-1 would call him and ask him what cars he had available on the lot and he would provide Credit Repair Coconspirator-1 with the car information and VIN. Credit Repair Coconspirator-1 would then use that information to arrange loans for the cars. Credit Repair Coconspirator-1 would give the loan checks to Vidal and tell him to deposit the checks. Credit Repair Coconspirator-1 told

---

[3] The USPIS memoranda from the four Proffers are attached hereto as Exhibits 1-4. Attached as Exhibit 5 are the Proffer Agreements, which consist of two separate documents, one executed by Vidal on December 8, 2018, and another initially executed on July 16, 2021, then executed by continuation on August 23, 2021 and August 30, 2021. Except for the names of the individuals representing the Government, the agreements are substantially the same. Copies of USPIS memos from the Proffers were previously provided to Vidal in discovery. Given that in these memos, Vidal makes various statements about other third-parties, and what they did or did not know about the charged criminal conduct, the Government respectfully requests that the notes of the Proffers be maintained under seal. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995) (recognizing law enforcement privilege and privacy as interests that may weigh in favor of sealing).

Vidal that he was not going to give the money back to the bank, but the client was going to keep the money as a personal loan.

Yet, although he acknowledged his understanding that Credit Repair Coconspirator-1 clients wanted a loan for the cash and did not want to buy a car, Vidal proffered that he stopped working with Credit Repair Coconspirator-1 after realizing that he was participating in a scam. Vidal claimed to have consulted a lawyer after receiving ten checks from clients referred by Credit Repair Coconspirator-1, but continued to negotiate an additional ten checks (for a total of 20 vehicles, all of which were returned) before he stopped doing business with Credit Repair Coconspirator-1.

Each of Vidal's admissions at the Proffers were made subject to the terms of a Proffer Agreement. (Ex. 5.) While the Proffer Agreement contained protections limiting the use of the defendant's statements, it also contained a waiver clause setting out circumstances in which those protections would be waived. The waiver clause in the Proffer Agreement states, in relevant part, that statements made by the defendant at the Proffer could be used "to rebut any evidence or arguments offered by or on behalf of [Eduar Vidal] (including arguments made or issues raised *sua sponte* by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against [Vidal]." *See* Ex. 5, ¶ 3.

In the course of pretrial communications and given the nature of Vidal's denials of wrongdoing during the Proffers, the Government believes that Vidal may present arguments or testimony that are contradicted by certain of his statements at the Proffers. The Government understands that any motion for the admission of statements otherwise protected under the parties' Proffer Agreement is currently premature, but writes to set forth the legal principles applicable to the defendant's "opening the door" to otherwise protected statements.

**B. Applicable Law**

A defendant's own statements are admissible non-hearsay because they are admissions by a party opponent under Federal Rule of Evidence 801(d)(2). Although statements made during plea discussions between a criminal defendant and the Government are ordinarily inadmissible at trial under Federal Rule of Evidence 410, the protections of Rule 410 are waivable. *See United States v. Mezzanatto*, 513 U.S. 196, 209-10 (1995). It is constitutionally permissible for a defendant to make a proffer statement pursuant to a written proffer agreement which, in part, waives the defendant's rights under Rule 410 to protection from the subsequent use of the statements in a future proceeding if the defendant's cooperation does not result in a plea. *See, e.g., id.* at 205, 210; *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004).

In determining whether a defendant has triggered the type of waiver contained in Vidal's proffer agreement, the Second Circuit has instructed that a district court:

> [A]sk first whether there has been any evidence offered or elicited, or "factual assertion" made, by or on behalf of the defendant that would trigger the Rule 410 waiver, and second, if so, whether the proffer statement "fairly rebut[s]" the fact asserted or evidence offered or elicited. If the defendant makes a factual assertion at trial that contradicts a statement made during the proffer session, the Government may then offer the earlier proffer statement to rebut the assertion being made at trial. Rebuttal is "necessarily a flexible concept," and not "limited to evidence that directly contradicts what it opposes; rather, rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary."

*United States v. Rosemond*, 841 F.3d 95, 107-108 (2d Cir. 2016) (quoting and citing *Barrow*, 400 F.3d at 117-21).

The Second Circuit has made clear that "[t]he mere fact that a defendant pleads not guilty and stands trial is not a factual assertion that triggers the proffer agreement waiver." *Barrow*, 400 F.3d at 118. Defense counsel may "attempt to demonstrate why the facts put in evidence by the

prosecution are insufficient," and "challenge[] the sufficiency of government proof on elements such as knowledge, intent, identity, etc.," without triggering the factual assertion requirement of waiver. *Id.* at 119. "In other words, the proffer agreement does not bar a defendant from arguing that the Government has failed to meet its burden of proof." *Rosemond*, 841 F.3d at 108.

However, the Second Circuit has also clarified that waiver provisions apply to any factual assertions made by or on behalf of the defendant, "whether made 'directly or implicitly,' during counsel's opening argument or through cross-examination." *Id.* In *Barrow*, the Second Circuit discussed the circumstances that would trigger a waiver under a proffer agreement with a waiver clause substantially similar to Vidal's. The proffer agreement at issue in *Barrow* stated that the Government could use the defendant's proffer statements "as substantive evidence to rebut any evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant] at any stage of a criminal prosecution (including but not limited to detention hearing, trial or sentencing)." 400 F.3d at 113-14, 118. The Second Circuit found that such "triggering language unambiguously expresses the parties' intent to create an expansive waiver," and rejected the defendant's argument that "only a specific or direct contradiction between his proffer statement and an assertion by counsel" triggers a waiver under such a clause. *See id.* at 117-18; *see also id.* at 123. To the contrary, the Second Circuit ruled that a defense opening or cross-examination may implicitly make a factual assertion contrary to a defendant's proffer statements and thus trigger a waiver. *See id.* at 118-20. With respect to implicit factual assertions, the Second Circuit stated:

> [A conclusion that there has been a factual assertion triggering a waiver] may not be reached so easily when counsel's arguments or questions assert facts implicitly rather than directly. For example, a cross-examination question challenging a witness's perception or recollection of an event does not necessarily imply that the event did not occur, only that the witness may not have seen or reported it accurately. On the other hand, a question accusing a witness of fabricating an event . . . does implicitly assert that no such meeting ever took place. Thus, when confronted with a government argument that a defense opening or cross-

> examination implicitly satisfies the factual assertion requirement for waiver, a district court may well have to consider carefully what fact, if any, has actually been implied to the jury before deciding whether proffer statements fairly rebut it.

*Id.* at 118-19.

Numerous courts in this Circuit have found waivers based on implied factual assertions. For example, in *United States v. Shaw*, a defendant was tried on charges that he (among other things) was involved in distributing marijuana from two apartments. *See* Brief for the United States of America at 42-48, *United States v. Shaw*, No. 08-CR-2978 (2d Cir. Apr. 22, 2009), 2009 WL 6870075. During the trial, the defendant's counsel implied that the defendant was merely an innocent bystander present at the apartments when law enforcement officers executed search warrants at the apartments by asserting in the opening statement: "You're going to hear about [this defendant's] arrests for small sales and for being in apartments with small amounts of marijuana. But there will be no evidence, no credible evidence, tying him to large amounts of marijuana . . .." *Id.* (emphasis omitted). The defendant's attorney also implied such a mere presence argument by asking, on cross-examination of officers involved in executing the search warrants, whether a confidential informant had provided a description that matched this defendant prior to the execution of the search warrants, and whether these officers had dusted the marijuana, scales and drug paraphernalia found in the apartments for fingerprints. *Id.* To rebut the impression created by these points, the district court allowed the Government to introduce the defendant's proffer statements that he had sold marijuana with others out of the two apartments. *Id.* The Second Circuit affirmed, stating: "Because defense counsel implied facts that contradicted Brown's proffer statements, the District Court did not err in admitting the proffer statements." 354 Fed. Appx. 439, 443 (2d Cir. Sept. 16, 2009).

The Second Circuit has also provided guidance on the scope of a waiver triggered by an express or implied factual assertion. In *Barrow*, for instance, the Second Circuit explained that the

waiver provision did not limit the Government to offering only proffer statements that directly contradicted defense counsel's factual assertions. 400 F.3d at 121. Rather, the Second Circuit held, "rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary." *Id.*; *see also id.* at 123 ("In sum, we reject [the defendant's] argument that his proffer agreement waiver applied only to statements that directly contradicted his attorney's factual assertions in his opening statement and cross-examination. The waiver language is fairly construed to apply to any proffer statements that could fairly rebut those factual assertions, and the district court did not abuse its discretion in admitting proffer statements relating to crack dealing for this purpose."); *see also United States v. Bryant*, 520 Fed. App'x 11, 13 (2d Cir. Apr. 3, 2013) (affirming district court's admission of defendant's proffer statements after defendant opened door given the Court's "broad definition of rebuttal evidence" in *Barrow*).

Additionally, the Second Circuit has ruled that in cases such as this, where the proffer agreement's waiver clause applies to "any stage" of a criminal prosecution, the Government may admit proffer statements in its case-in-chief if the defendant does anything to trigger a waiver during the Government's case-in-chief. *Barrow*, 400 F.3d at 117 n.7. As explained by the Second Circuit:

> As the Seventh Circuit observed in *United States v. Krilich*, a defendant can open the door to introduction of proffer statements as easily on the government's case-in-chief—for example, through cross-examination of a prosecution witness—as on his own case. In the former circumstance, and where the defendant rests without presenting direct evidence, the only opportunity the government will have to rebut the evidence elicited on cross-examination will be on its direct case. Thus, the critical issues for purposes of determining admissibility should be whether defendant's waiver does explicitly apply, as in this case, to "any stage" of his prosecution, and whether he has, in fact, triggered that waiver. If these questions are fairly answered in the affirmative, and if the evidence is otherwise admissible, the question of when in the course of trial the proffer statements should be presented to the jury is a matter sensibly left to the sound discretion of the trial judge.

*Id.* (citations omitted).

**C. Discussion**

The Government acknowledges that this motion is not yet ripe, as neither Vidal nor his counsel have made any affirmative factual assertions, express or implied. Nonetheless, and out of an abundance of caution given conversations with prior and current counsel to date, the Government writes to alert the Court that it intends to move for admission of Vidal's proffer statements in the event counsel places them at issue at trial, or in the event that Vidal testifies to facts that are inconsistent with his proffer statements.

For example, the Government anticipates that Vidal may argue at trial that he did not know in advance that the client would decline to purchase a car from him with the funds loaned by the victim financial institutions, and that he did not know that the representations to the financial institutions by the borrowers were false and fraudulent. If Vidal makes such arguments he will have opened the door, under *Rosemond*, and the Government intends to then offer testimony from a law enforcement officer who was present at Vidal's proffers. Such testimony may include, by way of example, depending on the circumstances, testimony regarding Vidal's admissions that: (a) he knew that the funds from the auto loans were not being used to purchase cars; and (b) Vidal knew that the representations on the reverse of the checks he signed were false, in that the funds were not being used to purchase a specific vehicle, and, at times, other financial institutions had issued loans for the purpose of buying the same vehicle.

## VII. <u>**The Court Should Preclude Any Defense Evidence of Purportedly Non-Fraudulent Conduct**</u>

Proof of non-fraudulent business transactions conducted or facilitated by Vidal, such as evidence of legitimate auto sales and loans he facilitated or accepted outside the charged scheme, constitutes impermissible "good acts" evidence that must be precluded.

Evidence that a defendant or others under his supervision engaged in legal, honest business conduct is irrelevant to whether the defendant engaged in, or had knowledge of, the fraudulent conduct charged by the Government. *See, e.g.*, *United States v. Walker*, 191 F.3d 336 (2d Cir. 1999) (affirming district court's refusal to allow defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted, because whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."); *United States v. Williams*, 205 F.3d 23, 34 (affirming district court's exclusion of evidence that defendant, who was accused of engaging in drug activity during two trips to Jamaica, made trips to Jamaica during which he did not engage in drug activity); *United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018) ("[I]t is black-letter law that evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." (internal quotation marks omitted)); *United States v. Perez*, No. 09 Cr. 1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (granting Government's motion *in limine* to preclude defendant who allegedly prepared false asylum applications from introducing evidence "that she provided accurate information to some of her clients and refused to help one individual falsify an application").

The Government does not dispute that Vidal may have conducted some legitimate business as a car dealer. But based on this well-settled law, the Government moves to preclude the defense from introducing such evidence of non-criminal acts.

## VIII. Conclusion

For the reasons set forth above, the Government respectfully submits that the motions *in limine* should be granted.

Dated: New York, New York
May 13, 2022

Respectfully submitted,
DAMIAN WILLIAMS
United States Attorney
for the Southern District of New York

By: /s/ ______________________
T. Josiah Pertz
Jonathan Bodansky
Jilan Kamal
Assistant United States Attorneys
(914) 993-1966/(212) 637-2385/-2192